CHAMPION SPARK PLUG COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64489.    Filed May 15, 1958.

*James F. Kennedy, Jr., Esq.*, and *A. J. Beran, C. P. A.*, for the petitioner.

*Frank W. Hardy, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in income tax of the petitioner for the year 1953 in the sum of $27,670.94. The only issue in the case is whether petitioner properly accrued and deducted for the year 1953 the amount of $33,750 representing a sum provided and authorized by the petitioner's board of directors on December 16, 1953, for payment in 60 equal semimonthly installments commencing January 15, 1954, the payments to be made to a disabled employee or his widow or her estate.

Some of the facts have been stipulated and they are found accordingly.

The petitioner is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has its principal office at 900 Upton Avenue, Toledo, Ohio. The petitioner's income and excess profits tax return for the calendar year 1953 was filed with the district director of internal revenue at Toledo, Ohio. During and for the year 1953, the petitioner kept its books and reported its income in accordance with an accrual method of accounting.

Ernest C. Badger, Jr., hereinafter referred to as Badger, was hired by the petitioner in 1945 as a traveling representative. He was approximately 35 years of age at the time and was neither a shareholder nor a relative of any shareholder of petitioner. Badger's duties as traveling representative and later as assistant export manager, required him to travel extensively through many foreign countries while contacting important large customers in all parts of the world.

At the time Badger was hired it was the policy of petitioner to inform all employees of employee benefits for which they would become eligible. One of such benefits to which an employee became eligible was a company-financed pension plan for salaried employees. One of the features of this plan consisted of substantial life insurance protection prior to retirement for all insurable employees. The program was financed through the purchase of individual life annuity policies for each employee from an insurance company. In the event of the death of an insurable employee prior to retirement, life insurance proceeds in an amount equal to one hundred times the employee's monthly retirement benefit would be paid to his beneficiary. In the event of the death of an uninsurable employee, only the premiums paid in with respect to the straight annuity policy would be paid to the beneficiary.

At the time Badger was hired, he was insurable on the basis of all normal standards and petitioner expected that upon Badger's becoming a participant in the pension plan, he would receive the full benefit of the life insurance protection afforded by the program. At the end of 1948, Badger became eligible as a pension plan participant and application for his annuity and life insurance policy was made by petitioner. The annuity policy was granted. The life insurance policy was refused by the insurance company because, in the opinion of the insurance company, Badger's job was considered dangerous in that it involved too much foreign travel. During the next several years and continuing up through most of the year 1953, continual

efforts were made by petitioner to have the insurance company reverse its prior decision, but all such efforts were unsuccessful.

In November 1953, Badger was taken severely ill while on a trip to South America. He was returned immediately to the United States and never thereafter returned to work for the petitioner. He died January 16, 1954.

Sometime in November or in early December of 1953, it was determined that Badger had cancer and that the disease in its then state would prove fatal. On December 16, 1953, petitioner adopted the following resolution:

RESOLVED: That, in recognition of the long and faithful services rendered to the Company by Ernest C. Badger, who has been completely disabled from an incurable illness and will not be able to render any further service, there be paid to him a sum equal to thirty times his present monthly salary, such sum, namely: $33,750, to be paid in sixty equal semimonthly installments, commencing January 15, 1954 as a continuation of his present salary, provided that in the event of his death before payment to him of said amount in full, the balance shall be paid in comparable installments to his wife, Doris E. Badger, if living, otherwise to her estate.

The amount of $33,750 was computed by petitioner by a computation which determined the amount of insurance he would have been entitled to had the petitioner been able to secure the policy which it tried to secure from the insurance company. The amount so determined was a little less than the $33,750 authorized by the resolution and petitioner "rounded out" the sum to make it an even 2½ years of payments.

During his employment Badger had received full and reasonable compensation for all services performed by him for the petitioner and in authorizing the payment of $33,750 to Badger and his widow, petitioner's management took into consideration that it was the company's assignment of post of duty to Badger which prevented him from being insured at the time of his death. Had the insurance company approved the original application for life insurance, petitioner would have incurred additional total premium expense for the years of his covered employment of $1,226.93.

The authorized payment of $33,750 constituted an ordinary and necessary expense of the petitioner's business and constituted a properly accrued liability for the year 1953.

### OPINION.

Respondent, in his opening statement and throughout his brief, states the question in the case is whether petitioner can secure the deduction in 1953 when it accrued the item or in the years of payment. He concedes the deductibility of the payments when made, as business expenses under section 23 (a) (1) (A).[1] And yet, respondent's first

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

argument on brief is that petitioner "was never obligated to pay any part of the sum. Hence, there was no legal liability which it could accrue."

It is true that accrual of an expense as a deduction is dependent upon the existence of a fixed and definite obligation. And it may be true that here there was no underlying legal liability compelling the petitioner to make the fixed and definite obligation. But this lack of an underlying legal liability is not fatal to petitioner's argument. There is no requirement that "there must be an underlying legal obligation to make an expenditure before it can qualify as an 'ordinary and necessary' business expense under section 23 (a) (1), Internal Revenue Code of 1939." *Waring Products Corporation*, 27 T. C. 921, 929. It is just as true that there is no requirement that there must be an underlying legal liability before a definite and fixed obligation to make an expenditure can qualify as an accrued "ordinary and necessary" business expense under section 23 (a) (1), I. R. C. 1939. In either instance, the basic question is, as was stated in *Waring Products Corporation, supra*, "whether, in all the circumstances, the expenditure is ordinary and appropriate to the conduct of the taxpayer's business."

In modern times a large corporation often makes some expenditures having a connection with the employer and employee relationship, such as sickness, recreational, or welfare items, which the employer, for business reasons or good employee relationship, desires to either pay or obligate itself to pay. This is not a situation of an obligation to make a gratuitous expenditure having no connection with petitioner's trade or business for respondent concedes the deductibility of payment. It is sufficient here that the petitioner desired to obligate itself to make the payments that have a connection with its employer-employee relationship. It translated its desire into an unconditional obligation to make the payments. The expenditure, which we feel was ordinary and necessary in the conduct of its business, was properly accruable in the year 1953 when the obligation to pay was made fixed and definite by the resolution.

Respondent's second argument is that section 23 (p) of the Internal Revenue Code of 1939 is applicable. This section provides that if compensation is paid, under certain plans deferring receipt, and the compensation would qualify as a deduction under section 23 (a), such amount shall only be deductible "in the taxable year when paid."

Respondent has implemented section 23 (p) by regulations and we quote applicable portions of Regulations 118, section 39.23 (p)–1 (c) and (d) :

(c) Section 23 (p) is not confined to formal stock bonus, pension, profit-sharing, and annuity plans, or deferred compensation plans, but it includes

any method of contributions or compensation having the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation. Thus, where a corporation pays pensions to such of its retired employees and in such amounts as may be determined from time to time by the board of directors or responsible officers of the company, or where a corporation is under an obligation, whether funded or unfunded, to pay a pension or other deferred compensation to an employee, there is a method having the effect of a plan deferring the receipt of compensation for which deductions are governed by section 23 (p). If an employer on the accrual basis defers paying any compensation to an employee until a later year or years under an arrangement having the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, he shall not be allowed a deduction until the year in which the compensation is paid. * * *

(d) Deductions under section 23 (p) are generally allowable only for the year for which the contribution or compensation is paid, regardless of the fact that the taxpayer may make his return on the accrual basis. * * *

It is respondent's argument that the payments to Badger and his wife were made pursuant to an informal plan of deferred compensation and under section 23 (p) and the above regulations, petitioner, even though on the accrual basis of accounting, is allowed a deduction only in the year of payment. Respondent points to language in the resolution of the board of directors as indicating the payments were considered as deferred compensation, or, as stated in the resolution, "a continuation of his present salary." But this resolution recognized he would be unable to render any further services and his then semimonthly salary fixed the amount of installment payments but not the amount of the total sum. The facts leading up to the adoption of the resolution were explained by petitioner's secretary, and we think that this explanation should be considered. The background facts were detailed by petitioner's secretary, as follows:

Well, the company considered the sudden tragic event that had happened to the financial status of the Badger family, and they also considered the fact that the company's assignment, that they had given Mr. Badger, had barred him from getting the insurance under the pension plan, and one of the Vice-Presidents then asked me to work out a form of aid that could be rendered to the Badger family, and I then worked out the program of what he would receive under the pension plan, which is 11,600 and some odd dollars, and then I also worked out what he would have received had he been able to get this insurance, which is 100 times $440 monthly pension that he had been entitled to, would have been his insurance coverage, or 44,000. Then I submitted this, the 44,000 minus the 11,600 some odd dollars, to them for their consideration.

The secretary went on to state that his computation was accepted by the board of directors of petitioner. He said the actual computation he worked out was a little less than $33,750 and "it was rounded out to make two and a half years of payments." He also stated the reso-

lution was drafted by outside legal counsel who "were told the objective that we wanted to obtain" and "a more or less standard clause or resolution was adopted." He testified flatly that the authorized payment was not paid as additional compensation for past services and he said:

It was paid strictly on the thought that the position that Mr. Badger had with us, of traveling these numerous countries, some with substandard health standards, prohibited him from getting the insurance under the pension plan, and we felt obligated due to that fact.

We are convinced that a study of the entire record shows that Badger had been fully paid for past services and the authorized payment was not compensation for any services rendered to the petitioner. It was to alleviate the financial hardship suffered as a result of his fatal illness. Petitioner, with commendable solicitude for the sad plight of a faithful employee, felt some measure of obligation due to the fact that his assigned position had resulted in his loss of insurability. Petitioner's discharge of the obligation in the manner revealed by this record was not the payment of compensation under any plan deferring the receipt of compensation such as to render section 23 (p), or the quoted regulations, applicable.

Respondent recognizes that section 23 (p) does not apply when the authorized payments are not payments of deferred compensation under some plan. A portion of section 39.23 (p)–1 of Regulations 118 provides:

Section 23 (p) does not apply to a plan which does not defer the receipt of compensation. Nor does section 23 (p) apply to deductions for contributions under a plan which is primarily a dismissal wage, or unemployment benefit plan or a sickness, accident, hospitalization, medical expense, recreational, welfare, or similar benefit plan, or a combination thereof. * * *

We hold section 23 (p) does not apply; that the authorized payment to Badger became an unconditional obligation to pay a business expense upon the adoption of the resolution of December 16, 1953, and was accrued, and properly so, by petitioner in the taxable year 1953.

*Decision will be entered under Rule 50.*