The H. B. Ives Company v. Commissioner.
H. B. Ives Co. v. Commissioner
Docket No. 62888.
United States Tax Court
T.C. Memo 1959-187; 1959 Tax Ct. Memo LEXIS 64; 18 T.C.M. (CCH) 845; T.C.M. (RIA) 59187; September 30, 1959
*64 Alphonsus R. Romeika, Esq., for the petitioner. Manning K. Leiter, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in petitioner's income tax of $16,525.89 for the year 1953. The only issue is whether petitioner properly accrued and deducted in 1953 under section 23(a)(1)(A), I.R.C. 1939, an amount paid in 1954 which represented a sum authorized by its directors in 1953 for the purchase of annuities for employees ineligible under its 1951 annuity plan, or whether such amount was deductible, if at all, solely under section 23(p), I.R.C. 1939. Findings of Fact The stipulated facts are found. Petitioner is a Connecticut corporation with its principal office in New Haven, Connecticut. It filed its return for the year 1953 with the director of internal revenue at Hartford, Connecticut. Petitioner keeps its books of account and prepares its returns on an accrual method of accounting and on a calendar year basis. In 1951 petitioner created a group life annuity plan, hereafter called the 1951 plan, for the purpose of providing retirement benefits for its employees. The 1951 plan covered petitioner's *65 employees who were under the age of 70 years and otherwise qualified. From 1951 through 1953, the cost of this plan was $21,244.87, $22,105.42 and $20,898.72, respectively. Petitioner deducted these respective amounts on its 1951, 1952 and 1953 returns. Four of petitioner's employees were ineligible under the 1951 plan because they were over the age of 70 years. These employees, hereafter called the ineligible employees, and their respective dates of birth were: Name of Employee
Date of Birth
Frank Apuzzo
August 14, 1871
George W. Bradley
February 25, 1874
Louis Fusco
January 11, 1879
Furman Romans
May 15, 1880
Petitioner felt it had a moral obligation to give the same pension benefits to the ineligible employees who were excluded from the 1951 plan. On November 24, 1953, petitioner's directors held a meeting. The minutes of this meeting stated: "Our President advised the board that four long service employees were excluded from our insured [1951] plan merely because they happened to be over 70 at its inception. Two of these will retire early in 1954, another during the first half of year 1955, while a fourth has already retired. He stated that he *66 felt we were really obligated to give these [ineligible] employees equivalent benefits, that he had contacted an insurance agent who had recommended the immediate purchase of annuities to take care of the company's obligation. (Resolution was passed as follows:) "Resolved that the sum of $22,000.00 be appropriated and set aside immediately for the purchase of annuity contracts for the four [ineligible] employees, that the President be authorized to negotiate with various insurance companies and enter into the necessary annuity contracts to accomplish the purpose of the resolution, and that the moneys hereby appropriated and set up as a liability of the corporation as of this date and that negotiation with the insurance company be completed prior to February 15, 1954 when the first additional [ineligible] employee will retire." After the adoption of the November 24, 1953 resolution, petitioner's president negotiated with an insurance company for the purchase of annuity contracts for each of the ineligible employees. Difficulty encountered in obtaining the correct ages of the ineligible employees caused a delay in the execution of the annuity contracts. The applications *67 for each of the annuity contracts were similar except for the amounts and dates the payments would begin. On January 15, 1954, the effective date of the annuity contracts, the insurance company sent petitioner an invoice for the four annuity contracts in the total amount of $22,100.42. On February 16, 1954, petitioner paid the invoice of $22,100.42. Petitioner made the following entry on its books as of December 31, 1953: Dr. Pensions Paid
$22,463.89
Cr. Accounts Payable
$22,463.89 It also deducted this amount of $22,463.89 in its 1953 return. Respondent determined that the accrued amount of $22,463.89 was deductible in the year when paid pursuant to section 23(p)(1)(D), I.R.C. 1939. Petitioner conceded in brief that $363.47, the difference between $22,463.89 and $22,100.42, was an erroneous entry. Furman Romans retired in September 1952. At that time petitioner began to pay him a monthly amount equivalent to what he would have received under the 1951 plan. Louis Fusco, George W. Bradley and Frank Apuzzo retired on February 15, 1954, March 15, 1954 and June 15, 1955, respectively. Petitioner's purchase of annuity contracts for each of the ineligible *68 employees did not represent compensation for past services and was not a method which had the effect of an annuity plan or similar plan deferring the receipt of compensation. The authorized payment of $22,100.42 was an ordinary and necessary business expense and a properly accrued liability for the year 1953. Opinion We cannot distinguish this case from Champion Spark Plug Co., 30 T.C. 295, which has now, and subsequent to the filing of these briefs, been affirmed on review. (C.A. 6) 266 F. 2d 347. The accrual of the liability here was as properly deductible at the time the obligation was incurred as it was in the Champion case. And section 23(p) is no more applicable here than it was there. In the words of that case: "Petitioner's discharge of the obligation in the manner revealed by this record was not the payment of compensation under any plan deferring the receipt of compensation such as to render section 23(p), or the * * * regulations, applicable." Here, as there, "[petitioner], with commendable solicitude * * * felt some measure of obligation due to the fact that" the employees in question were not includible by reason of their age at *69 the time petitioner adopted its retirement plan, and by reason of their actual or impending retirement. That in the Champion case the employee's uninsurability arose on account of the type of his occupation, and that he later contracted an incurable disease, seems to us a hairbreadth distinction that cannot survive examination. Decision will be entered under Rule 50.