# 172

Docket No. 82074. Filed November 7, 1961.

*Frank E. Kenney, Esq.*, for the petitioner.
*Robert W. Siegel, Esq.*, for the respondent.

## OPINION.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1956 in the amount of $61,048.

The only issue is whether petitioner properly accrued on its books and records and deducted from its gross income in its income tax return for the year 1956 the amount of $117,400 representing the sum petitioner agreed to pay under the terms and provisions of a written agreement with its former president, executed on March 17, 1956, payable in five annual installments commencing in 1957, the payments to be made as liquidated damages to its former president whose services petitioner had terminated by action of its board of directors at a meeting held January 19, 1956.

All the facts were stipulated and are so found.

Petitioner is a corporation organized and existing by virtue of the laws of the State of Michigan, with its principal offices at Detroit. It filed its United States corporation income tax return for the

calendar year 1956 with the district director of internal revenue for the district of Michigan.

During the period in controversy, petitioner was engaged in the manufacture of products for the automotive industry. Its issued and outstanding capital stock is listed and traded on the American Stock Exchange and the Detroit Stock Exchange.

Petitioner keeps its books and records and files its income tax returns on the accrual basis.

On July 28, 1954, petitioner made and entered into an employment agreement with Robert W. Burgess, its president, whereby petitioner employed Burgess for a term of 5 years and 5 months from August 1, 1954, to December 31, 1959, at a basic salary of $70,000 per annum payable in semimonthly installments of $2,916.66 each, and in addition thereto the payment of additional compensation equal to not less than 2½ percent of the net profits of petitioner before Federal taxes on income for each calendar year during the term of the agreement, the amount of excess over 2½ percent of the net profits of petitioner, if any, to be determined by the board of directors of petitioner in its discretion. Burgess agreed to devote his business time, skill, efforts, and attention exclusively to his duties during the term of the agreement and agreed that he would not, during the term thereof, engage, directly or indirectly, in any other business. He also agreed to communicate all inventions or improvements made or conceived by him while in the employ of petitioner. The agreement further provided that in the event of the discharge of Burgess by petitioner for breach of the agreement the agreement should terminate and Burgess would be entitled to receive only his basic salary and pro rata additional compensation to the end of the month in which such discharge should occur.

On January 19, 1956, the board of directors of petitioner, at a meeting of the board held on that date, adopted a series of resolutions whereby the following action was taken: Burgess was removed as president and general manager effective immediately; Burgess was discharged and his employment contract was terminated, effective immediately, because of alleged breaches thereof by Burgess. Those resolutions provided, in part:

WHEREAS, in the judgment of the Board of Directors of this Corporation the business interests of the Corporation will be served by the removal of ROBERT W. BURGESS as President of this Corporation,

NOW, THEREFORE, BE IT RESOLVED, that the said ROBERT W. BURGESS be and he is hereby removed as President of this Corporation, effective immediately.

\* \* \* \* \* \* \*

WHEREAS, in the judgment of the Board of Directors of this Corporation the business interests of the Corporation will be served by the removal of ROBERT W. BURGESS as General Manager of this Corporation,

174

Now, THEREFORE, BE IT RESOLVED, that the said ROBERT W. BURGESS be and he is hereby removed as General Manager of this Corporation, effective immediately.

\* \* \* \* \* \* \*

WHEREAS, ROBERT W. BURGESS has been and is in the employ of this Corporation by virtue of an employment agreement dated the 28th day of July, 1954, for a term of five years and five months from August 1, 1954, to December 31, 1959, and

WHEREAS, ROBERT W. BURGESS has been guilty of numerous and serious defaults in the performance of said employment agreement and has breached said agreement,

Now, THEREFORE, BE IT RESOLVED, that by reason of breach of his employment agreement, ROBERT W. BURGESS is hereby discharged from the employ of this Corporation, effective immediately.

BE IT FURTHER RESOLVED, that said employment agreement with the said ROBERT W. BURGESS be and the same is hereby terminated for breach, effective immediately.

\* \* \* \* \* \* \*

RESOLVED, that the Secretary of this Corporation be and he is hereby directed to deliver to ROBERT W. BURGESS a certified copy of these resolutions as notice to him of the action taken by this Board of Directors.

At that same meeting held on January 19, 1956, the board elected Soren W. Sorensen, Jr., as president and general manager. A certified copy of the resolutions was served upon Burgess.

On February 27, 1956, Burgess and his attorney, Emil W. Colombo, sent a letter to petitioner and its board of directors. In that letter Burgess protested his discharge as president and general manager and the cancellation of his employment contract. He denied that any grounds existed for his discharge. He stated, "Your action in discharging me and in cancelling my contract has no justification in fact; it is arbitrary, unwarranted, unjustifiable and a deprivation of my legal rights under the contract. Your action is a deliberate and wilful breach of my contract." He demanded that he be reinstated. He stated that upon failure of petitioner to reinstate him as president and general manager and to reinstate his contract for the full period of the unexpired term thereof, he would hold petitioner fully liable for the full amount of compensation which he would have earned during the full period of his contract.

On March 17, 1956, petitioner and Burgess, desiring amicably to settle the controversy, made and executed an agreement whereby all matters in dispute between them and all claims and demands of Burgess against petitioner were settled. Some of the pertinent portions of the agreement are as follows:

WHEREAS, on January 19, 1956, the Board of Directors of Peninsular adopted resolutions \* \* \*

WHEREAS, Peninsular affirms that Burgess did in fact breach his contract \* \* \*

WHEREAS Burgess denies that he breached his said contract \* \* \*

WHEREAS, the parties desire to settle amicably the controversy which has thus arisen between them, and all other matters in dispute between them,

Now, THEREFORE, IT IS AGREED as follows:

1. Burgess acknowledges that he has received all salary, bonus, and other sums of money owing to him by Peninsular for the calendar year 1955 and all preceding calendar years during which he was in the employ of Peninsular * * *.

2. Burgess acknowledges that he has received full payment of his basic salary for the month of January 1956.

3. In full settlement of, and as liquidated damages for, all of Burgess' claims for salary, bonus, compensation, breach of contract, and any other claim or claims which he may now have or might otherwise have now or in the future, Burgess agrees to accept from Peninsular, and Peninsular agrees to pay to Burgess, the following amounts:

> On January 2, 1957, the sum of $25,000,
> On January 2, 1958, the sum of $25,000,
> On January 2, 1959, the sum of $25,000,
> On January 2, 1960, the sum of $25,000,
> On January 2, 1961, the sum of $17,400.

In the event of the death of Burgess prior to January 2, 1961, any of the aforesaid amounts not paid to him shall be paid on the same dates and in the same amounts as aforesaid to Burgess' personal representatives or to the person or persons entitled to receive the same upon the closing of his estate.

4. No payment above provided for shall be subject to demand by Burgess or his legal representatives except at the times hereinabove specified. No payment, nor any benefit under the terms of this agreement, shall be assignable or transferable by Burgess until due and payable hereunder, and Peninsular shall not be obligated to any assignee or transferree with respect to any portion thereof so sought to be assigned or transferred. No payment hereinabove specified shall be subject to garnishment, attachment, execution, or other legal process, nor to the claims of creditors or others, except to the extent of a payment which has become due and payable in accordance herewith and has not yet been paid to Burgess or his legal representatives.

5. Burgess hereby releases and discharges Peninsular from all claims and demands of every name and nature whatsoever, except Peninsular's obligations specifically set forth herein, and Peninsular hereby releases and discharges Burgess of all claims and demands of every name and nature whatsoever.

The agreement of March 17, 1956, did not require Burgess to perform any further services for petitioner or to refrain from working for anyone else. His connection with petitioner was completely terminated. Burgess was not obligated in any manner under the agreement to do or refrain from doing anything thereafter. The amount payable to Burgess under the agreement was payable in all events and was not subject to any contingencies or future events.

Petitioner recorded upon its books the accrual of the amount of $117,400 which it had agreed to pay to Burgess in accordance with the terms of the agreement of March 17, 1956.

Petitioner claimed the amount of $117,400 as a deduction from its gross income in its income tax return for the taxable year ended December 31, 1956.

Petitioner paid the total amount of $117,400 in installments in accordance with the terms and provisions of the agreement of March 17, 1956.

Burgess died on June 6, 1960.

The respondent disallowed the deduction claimed by petitioner in the amount of $117,400 and, in a statement attached to the deficiency notice, explained the disallowance thus:

It is held that the item "Severance Compensation to Former Officer, $117,-400.00", which you included in "Other Deductions" on line 30 of your income tax return for the year ended December 31, 1956, does not constitute an allowable deduction for the year ended December 31, 1956 under the provisions of section 162 or any other section of the Internal Revenue Code.

Petitioner contends it is entitled to accrue in 1956 as a liability the entire $117,400 and deduct that amount as an expense in 1956. Respondent contends that petitioner is not entitled to any deduction in 1956 but he would apparently allow the $117,400 as deductions spread over the next 5 years, 1957 through 1961. The question is not whether the $117,400 is deductible in any event but, rather, in what year or years is it deductible. The answer depends upon the proper application of "Subchapter E—Accounting Periods and Methods of Accounting" of chapter 1 of subtitle A of the Internal Revenue Code of 1954. The material sections of this subchapter are sections 446 and 461.[1] We would sustain the respondent's determination if petitioner had kept its books and records and had filed its returns on the cash receipts and disbursements method. But it is stipulated that "The petitioner keeps its books and records and files its income tax returns on the accrual basis." The accrual method is a permissible method under section 446 (c) and petitioner's taxable income "shall be computed" under that method as provided by section 446 (a). Our problem is to determine, under section 461, "the taxable year which is the proper taxable year under the [accrual] method of accounting" for which the deduction is to be taken. In this connection, the respondent's regulations, sec. 1.461–1(a)(2), Income Tax Regs., are specific in providing that:

Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * *

This provision of the regulations is in substance what was held in an early decision of the United States Supreme Court in *United States*

---

[1] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

* * * * * * *

(c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

　(1) the cash receipts and disbursements method;

　(2) an accrual method;

SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.

(a) GENERAL RULE.—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

v. *Anderson*, 269 U.S. 422. There the taxpayer had adopted the accrual method of accounting but did not want to accrue and deduct its munition taxes in 1916 for the reason that such taxes were not *due and payable* until 1917. The Supreme Court, in holding that the taxpayer *must* deduct the taxes in 1916, said:

> Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, *all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it.* In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. * * * [Emphasis supplied.]

In *American National Co.* v. *United States*, 274 U.S. 99, the taxpayer sold certain 5-year notes to investors, the taxpayer agreeing to pay the investors as a bonus 1 percent per annum of the amount of the note in addition to the regular interest called for on the notes sold. The taxpayer, being on the accrual basis, sought to deduct in the year of payment the *entire* bonus agreed to be paid on the notes sold although part of such bonus *would not become due until later years.* In holding for the taxpayer, the Supreme Court said:

> under the doctrine of the Anderson Case, the total amount of the bonus contracts was deductible as an expense incurred within the year, although it did not "accrue" in that year in the sense of becoming then due and payable.

To the same effect is *Aluminum Castings Co.* v. *Routzahn*, 282 U.S. 92, wherein it was held that, under the accrual method of accounting, an expense was deductible for the year in which all events which determine the fact of liability had occurred, although payment was not due until a later year.

On the other hand, it is just as well settled that, where a taxpayer is denying liability or there are other contingencies present, a taxpayer using the accrual method of accounting may not deduct any amount until such contingencies are removed. *Lucas* v. *American Code Co.*, 280 U.S. 445; *Dixie Pine Products Co.* v. *Commissioner*, 320 U.S. 516. In the latter case it was said:

> It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid;[7] and this cannot be the case where the liability is contingent and is contested by the taxpayer.[8] Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated.[9] [Footnotes omitted.]

In the instant case, Burgess claimed that he was discharged as president and general manager of petitioner and his employment contract terminated without right and that the petitioner and its board of directors had breached his employment agreement in taking such action. A controversy existed between the parties as to their respective rights and the claims made by each against the other. To settle the controversy amicably between them, and in full settlement of and as liquidated damages for all of Burgess' claims against the petitioner, the agreement of March 17, 1956, was executed. That agreement fixed the rights of Burgess and established a definite liability on the part of the petitioner that was not subject to any contingencies. Burgess' right to payment of the entire amount was not contingent upon any subsequent event, was not contingent upon the performance of any services, and was not contingent upon doing or refraining from doing anything. There was a fixed, definite, and unconditional liability on the part of the petitioner under the agreement to pay Burgess a fixed, definite, and agreed amount of $117,400. The liability of petitioner to Burgess was absolute and irrevocable in 1956.

Petitioner cites *Champion Spark Plug Co.*, 30 T.C. 295, affd. 266 F. 2d 347 (C.A. 6, 1959), as being a case very closely in point to the issue here involved. In that case the taxpayer in 1953 adopted a resolution in recognition of the long and faithful service rendered to the taxpayer by one of its employees, who had become completely disabled from an incurable illness and unable to render any further service, to pay him a sum equal to 30 times his monthly salary, which sum was to be paid in 60 equal semimonthly installments, beginning January 15, 1954. The total amount to be paid amounted to $33,750. The taxpayer kept its books and reported its income in accordance with an accrual method of accounting. We held that the taxpayer was entitled to deduct from its gross income in 1953 the full amount of $33,750, although none of this amount was due and payable in 1953. The Court of Appeals for the Sixth Circuit, in affirming our opinion, said, in part:

The United States Tax Court held that, in the circumstances of the case, the authorized payment to respondent's employee was a deductible business expense for the year 1953, although the sum authorized to be paid was payable to the employee in sixty equal semi-monthly instalments, beginning January 15, 1954.

We believe that the tax court reached a correct result, upon the basis of its findings of fact and opinion. Accordingly, its decision is affirmed.

In the instant case the respondent, in contending that petitioner is not entitled to deduct any amount in 1956, argues that the agreement of March 17, 1956, was a *modification* of the prior employment agreement of July 28, 1954. There is no merit in this argument. The agreement of July 28, 1954, was "terminated for breach, effective immediately" on January 19, 1956, at which time Burgess was removed as president

and general manager of the petitioner. Burgess and his attorney protested the discharge of Burgess and the cancellation of his contract. A definite and clear-cut dispute arose between petitioner and Burgess. Petitioner claimed it had discharged Burgess and canceled his contract because Burgess had been guilty of numerous and serious defaults in the performance of his employment agreement and had breached his employment agreement, all of which was denied by Burgess. In order to settle the controversy amicably, petitioner and Burgess entered into the agreement of March 17, 1956. This agreement was in no way a modification or revision or a continuation of the employment agreement of July 28, 1954, but was a separate, distinct, and definite agreement executed between petitioner and Burgess to settle amicably the controversy which had arisen between them, whereby petitioner became absolutely liable to pay Burgess the then-determined amount of $117,400. The agreement of March 17, 1956, was not subject to any contingencies or conditions. Burgess was not obligated or required to render or perform any services or refrain from doing anything. The liability to Burgess was fixed, absolute, and unconditional whether Burgess lived or died. All the events had occurred in 1956 which determined the fact of petitioner's liability to pay Burgess $117,400 as liquidated damages. We think the instant case is substantially on all fours in principle with *Champion Spark Plug Co., supra.*

For the reasons previously given, we hold that petitioner is entitled to deduct the full amount of $117,400 from its gross income in its income tax return for the year 1956. Because of other adjustments not here at issue,

*Decision will be entered under Rule 50.*