**VIRGINIA NATIONAL BANK,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 348–69–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Oct. 9, 1970.

Kaufman, Oberndorfer & Spainhour, Norfolk, Va., for plaintiff.

Brian P. Gettings, U. S. Atty., Norfolk, Va., Helen Marmoll, Atty., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

MACKENZIE, District Judge.

Appropriately proceeding under the proper federal statute, the Commonwealth of Virginia has imposed a tax on the holders of the shares of stock of any bank doing business in Virginia.

Upon receipt of the list of stockholders and the number of shares held by each, the Commissioner of the Revenue assesses upon each such holder the tax provided in the statute and makes returns of this assessment to the State Department of Taxation and to the Bank. By statute, the Bank is then required to pay the tax thus assessed against the shareholders directly into the State Treasury.

The tax is not assessed against the shares of stock held by exempt institutions, and the statute specifically directs that at the same time the Bank pays the stockholders' tax into the State Treasury, it shall pay directly to the exempt shareholder " * * * a sum equal to the tax which would otherwise have been paid * * * " etc.

Acting pursuant to these statutory directions, the Virginia National Bank paid the shareholders' tax for the taxable years 1963, 1964, 1965, and 1966, and, as required, remitted to exempt shareholders, an amount equal to the tax, for the same years.

The Bank claimed all such payments as deductions. The Internal Revenue Service allowed the deduction as to non-

exempt shareholders, but did not allow the deduction for the sums paid to exempt shareholders.

Payment of the Internal Revenue Service assessment was made and this suit for refund followed.

The issue is a comparatively narrow one—namely:

(1) Are such payments to exempt shareholders deducted as either "taxes" or "business deductions," as contended by the Bank?

(2) Are such payments non-deductible corporate distributions to shareholders as the Government contends?

---

## FINDINGS OF FACT

(1) Plaintiff, Virginia National Bank, a national banking institution, doing business in Virginia is subject to State taxation by Virginia, under authority of 12 U.S.C. § 548, when the tax is levied in accordance with that statute.

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. * * *" 12 U.S. C. § 548.

(2) Pursuant to such authority, Virginia has caused to be enacted under Chapter 10 of Title 58 of the Code of Virginia, 1950, as Amended, as Sections 58–465, et seq., in pertinent part as follows:

"§ *58–465. Meaning of the word 'bank' as used in this chapter.*—For the purposes of this chapter the word 'bank' shall mean any * * * bank, * * * organized by or under the authority of the laws of the United States, doing business * * * in this State * * *.

"§ *58–465.2. Meaning of 'exempt institution'.*—For the purposes of this chapter the term 'exempt institution' shall mean any * * * institution (a) the property of which is exempt from taxation under § 183 of the Constitution of Virginia * * * [my note: public buildings, churches, charitable institutions, etc.] * * * or (b) an insurance company which pays a State license tax on gross premium income * * *, which owns the shares of any bank * * *.

"§ *58–466. Bank capital not assessable; stockholders taxed.*—No tax shall be assessed upon the capital of any bank but the stockholders in such banks shall be assessed and taxed on their shares of stock therein.

"§ *58–473. Rate of taxation of bank stock; assessment; certain shares exempt; to whom lists sent.*—The commissioner of the revenue as soon as he receives the report mentioned in § 58–470 [my note: list of stockholders and shares held by each] shall assess upon each stockholder * * * a tax at the rate of one dollar on each one hundred dollars of such value of such stock. No such tax shall be assessed in respect to shares owned by exempt institutions * * *.

"§ *58–480. Time and manner of payments by banks or taxes assessed against stockholders, receipts therefor.* —Every bank, * * * shall pay into the State treasury the State taxes assessed against its stockholders * * *.

"§ *58–480.1 Payments by banks to exempt institutions and bank holding companies held by exempt institutions.* —Each bank, at the time it makes the payments required by § 58–480, shall pay to those of its stockholders which are exempt institutions, * * * a sum equal to the tax which would otherwise have been paid * * *."

(3) Acting under § 58–465 et seq., Code of Virginia, 1950, as Amended,

Virginia National Bank, made the following payments for the years in suit:

| Payments of taxes made directly to the Commonwealth of Virginia | Amounts paid to Tax Exempt-Institution Shareholders as required by Virginia Statute |
|---|---|
| 1963 $151,584.77 | $ 5,629.95 |
| 1964 $300,846.20 | $ 6,148.30 |
| 1965 $317,286.48 | $11,121.46 |
| 1966 $364,712.92 | $13,637.74. |

Taxes were computed according to the number of shares owned by each shareholder, and a check prepared on behalf of that shareholder for such tax and forwarded by the Bank to the Treasurer of Virginia. Equivalent checks were drawn by the Bank and sent to exempt shareholders with a letter that the Bank was sending to them, as required by law, the tax that the Bank would otherwise pay to the State of Virginia.

In this latter case, it is noteworthy that formerly these payments to statutory exempt institutions, like the shareholders' tax payments, could be made directly to the Treasurer of Virginia who, in turn, would make the final remittance to the exempt institutions. A 1964 Amendment to the State law did away with the necessity of this payment into the State, and its payment out, and directed the Bank to pay directly to the exempt institution.

(4) Virginia National Bank deducted on its tax returns for the years in suit all of the payments required of it by State law, § 58–465 et seq., i. e., both to the State of Virginia and to exempt institutions, as taxes, under either Section 164(a) or Section 164(e), or as ordinary and necessary expenses under Section 162 of the Internal Revenue Code of 1954.

(5) The Government disallowed the deductions by the Bank for sums paid by it to exempt institutions, and claims that such payments constitute non-deductible corporate distributions to shareholders.

(6) The disputed taxes were paid by the Bank, a refund was timely claimed and this suit for refund has been timely filed. This Court has jurisdiction under Title 28 U.S.C. § 1346(a) (1). The venue and parties are proper.

(7) It is stipulated that no dividend is declared to cover the amounts paid to the Treasurer of Virginia or forwarded to the exempt institutions and that no shareholder reimburses Virginia National Bank for any taxes paid under the Virginia Statute.

---

CONCLUSIONS OF LAW

■ (1) The quick answer to the problem posed here is that the payments made by Virginia National Bank to its shareholders which are exempt institutions are ordinary and necessary business expenses incurred in the carrying on of its banking business and deductible under Section 162(a) of the Internal Revenue Code of 1954.

Certainly the Virginia statute which makes such payments absolutely mandatory likewise makes such payments "necessary." These payments are likewise required to be paid annually by June 1st of each year, have been for many years, and are "ordinary" business expenses. The argument that the payments are made to shareholders who are not "creditors", runs counter to the record. A shareholder, entitled to such payment from the Bank, which in turn has no choice but to pay under the mandate of a State statute, is surely a creditor in every sense of that word, with the right to sue to collect.

---

■ The payment by the Bank and the right of the exempt shareholder to receive it is a legal obligation far surpassing the requirements (which need not be a legal obligation) to allow it to qualify as an "ordinary" and "neces-

sary" business expense. Waring Products Corporation v. Commissioner, Tax Court, March 12, 1957, 27 T.C. 921. As stated in *Waring*, supra, "The basic question is whether, in all the circumstances, the expenditure is ordinary and appropriate to the conduct of the taxpayer's business." See also: Champion Spark Plug Co. v. Commissioner, Tax Court, May 15, 1958, 30 T.C. 295, Affirmed 266 F.2d 347 (6th Cir., 1959).

---

(2) For appellate purposes, the Government requests that this Court make a finding on whether the payment made to exempt institutions by Virginia National Bank is a "tax," or not, under the appropriate parts of Section 164 of the Internal Revenue Code of 1954.

While perhaps not necessary for decision—nevertheless for the purpose of the record on review, the Court, further, is of the opinion that even if such payments were not necessary and ordinary business expenses and thus deductible on that score, that such payments also qualify as "taxes" in the context of the facts of this case, and would be deductible under this alternative, for these reasons:

(a) The payment of both the tax on shareholders into the State Treasury and the payment to exempt-institution shareholders, is found in the same taxing Statute of Virginia, § 58–465 et seq.

(b) The payment exacted is made absolutely mandatory with no options to the Bank, in the same taxing statute.

(c) The rate for fixing the amount to be paid is the same in both cases and is fixed by the same taxing statute.

(d) The total mandatory payment to be made by the Bank is the same, no matter what fluctuation may occur in stock ownership. The only change in the total required to be paid by the Bank is dictated only by change in value, not upon the ownership of the stock.

(e) Both payments could formerly be made in toto, to the State Treasurer, arguable, at least, as evidence of a tax. The 1964 amendment did not change the Bank's obligation to pay, but merely added an additional expense and duty on the Bank in requiring its remittance to be made directly to the exempt-institution shareholder.

As the Court views it, the per share tax on shareholders is nonetheless a *tax* remitted, when paid to a church or to an otherwise exempt institution such as a life insurance company. The basis for the remittance in the latter case is that the life insurance company in Virginia, by statute, is taxed solely upon its gross premium income, real estate and intangible personal property, "in lieu of all other taxes" (§ 58–500, Code of Virginia, 1950, as Amended). Hence the remittitur of the per share levy is allowed on the payment by the exempted company of its gross premium income, real estate and personal property tax "* * * in lieu of all other taxes" (§ 58–500). In other words, if this bank share levy is not a tax, the insurance company would not be exempted from its payment.

It seems clear, first, that the total obligation imposed by the State upon each Bank in Virginia has always been that each such Bank pay the prescribed tax on all of its shares, and second, that the payment procedures adopted (initially, that the taxes on shares owned by exempt-institution shareholders could be paid to the State for remittance, and, subsequently, that such tax be remitted directly to such shareholder) were designed and intended merely to provide a convenient method of refund, while still imposing upon the Bank the duty to pay the same aggregate amount of tax regardless of who owned the shares.

Assume for a purpose of illustration that all shares of a bank were owned one year by an exempt charity, and the bank properly remitted the tax to such ex-

empt charity. In such case, in the Government's view, it would not be entitled to deduct on the bank tax return the sum so paid. Assume that the next year shares were sold by the exempt charity to an individual, then upon the payment of the very same sum as in the former year—now paid to the State, would be a proper deduction. In this example the Bank has paid the identical sum in each year—has no control over the negotiation or ownership of its stock—and yet, the Internal Revenue Service reached opposing results over such payments in the two example years. This Court does not believe the law and regulations should be so interpreted.

The Government cites United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1936) as its chief authority in arguing that the payment to exempt-institution shareholders cannot be termed a "tax." The Court is of the opinion that this reliance is ill-placed.

United States v. Butler, supra, was testing the constitutionality of the "processing" levy under the Agricultural Adjustment Act. The Court, in a 4 to 3 decision, attempted to follow the revenue derived from the tax and to question its use by the Government as beyond the powers of Congress. In the instant case, the State bank share tax is not attacked as being in some posture an exaction constitutionally impermissible or that it is ultimately misspent by the State. The Court is only concerned in the instant case with the procedural handling of the refunding of the results of a tax which is correctly assessed under authority of a Federal Statute (12 U.S.C. § 548) many times tested and found proper.

In fact, United States v. Butler, supra, was about the last test of the "New Deal" legislation in the mid-30's, and the "processing tax" proved to be the straw the Court attacked to rule that it was an usurpatory economic regulation lurking behind the form of an otherwise valid revenue measure. The cases are clearly distinguishable.

In the Court's view, the deduction by Virginia National Bank of payments made to exempt-institution shareholders is allowable as a "tax" deduction.

As this Court understands it, some minor computation remains to determine the amount of refund due to Virginia National Bank, and assumes that this can be appropriately handled by counsel. If not, further recourse to this Court for that determination shall be had if no agreement is reached within sixty (60) days.

Counsel for the plaintiff will prepare a proper Order in accord with this Memorandum Opinion.