JOHN W. BENDER and ELIZABETH BENDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DANIEL M. NISLY and ALMA NISLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bender v. Commissioner
Docket Nos. 5060-78, 5061-78.
United States Tax Court
T.C. Memo 1982-134; 1982 Tax Ct. Memo LEXIS 615; 43 T.C.M. (CCH) 808; T.C.M. (RIA) 82134; March 18, 1982. *615 Petitioners J and D were partners in the J and D partnership, which was in the trade or business of operating a sawmill. Held, respondent's determination of petitioners' distributive shares of partnership income is sustained. D.M. Statton, for the petitioners. Leonard A. Hammes, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes: Petitioner
Docket No.
Year
Deficiency
John W. Bender and
5060-78
1974
$ 5,828.78
Elizabeth Bender
1975
4,023.82
Daniel M. Nisly and
5061-78
1974
$ 5,689.90
Alma Nisly
1975
3,891.53
After concessions, the sole issue for decision is whether the partnership known as J and D Sawmill is entitled to business deductions pursuant *617 to section 162 [1] during 1974 and 1975 in excess of amounts allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners John W. Bender and Elizabeth Bender, husband and wife, and Daniel M. Nisly and Alma Nisly, husband and wife, resided on Route 2, Kalona Iowa (hereinafter Kalona), when they filed their joint Federal income tax returns for calendar years 1974 and 1975 with the Internal Revenue Service Center, Kansas City, Missouri, and when they filed their petitions in this case. In January 1965, petitioners formed the J and D Sawmill partnership (hereinafter J and D) and commenced doing business. There was no written partnership agreement, and petitioners each withdrew different amounts of salaries from J and D depending on their financial needs. J and D was located near Kalona, and at all relevant times herein was primarily engaged in the manufacture of wooden pallets for industrial use. Petitioners are practicing members of the Amish faith and they live on farms near Kalona. It is an Amish custom to supply labor back *618 and forth among Amish farmers. In order to promote this Amish custom, as well as their religious beliefs, petitioners and six other individuals formed Living Soils, Inc. (hereinafter Living Soils), an Iowa corporation. The Articles of Incorporation stated that Living Soils was organized for the express purpose of establishing "the Soverign [sic] Lordship of Jesus Christ throughout the world and to acquire and maintain such lands and buildings as may be needed to properly provide for * * * [its] needs * * *." By July 1973, Living Soils was actively involved in operating three farms whose owners wanted to pool their efforts together. These three farms were owned by Daniel M. Nisly, Harvey Bender, and Enos Bender. John W. Bender is the son of Harvey Bender and the uncle of Enos Bender. During July 1973, a meeting was attended by the following three parties (hereinafter the Group): (i) petitioners, (ii) The Living Word, Inc. (hereinafter The Living Word), [2] a California corporation, which was represented by John Robert Stevens, (iii) Living Soils, which was represented by petitioners, Walter Rich, F. E. Bickhart, and John Robert Stevens. The Group wanted to create a religious *619 camp (hereinafter called Shiloh) where students could be trained for the ministry. The Group was disenchanted with the purely academic approach of many seminaries and it wanted Shiloh's students to engage in physical work in conjunction with their academic religious training. The Group planned to build Shiloh near Kalona on land owned by The Living Word, which would hold legal title to Shiloh's facilities. To help in Shiloh's operation, Living Soils agreed to provide Shiloh with food from the farms that it was operating. [3] Petitioners told the Group that J and D would purchase building materials and provide financial assistant for Shiloh. Furthermore, J and D agreed to provide Living Soils with financial assistance. In exchange for *620 the assistance that J and D and Living Soils agreed to provide Shiloh, The Living Word agreed to help both entities by promising them that Shiloh would provide labor to help the entities meet their manpower needs. At no time, however, did The Living Word agree that Shiloh would furnish a specified amount of labor to J and D; nor did The Living Word state the period during which the labor would be furnished. The building of Shiloh occurred mostly during 1974 and 1975, and included the construction of a kitchen and dormitories for the students. During this period, Shiloh began training some people for the ministry. [4] Those who came to Shiloh for ministry training received room and board, detal care, and some expense money. During 1974 and 1975, J and D did incur expenditures to assist in the building and operation of Shiloh, and the operation of Living Soils. During this same period, some of Shiloh's ministry students volunteered their labor on a sporadic basis to J and D, which kept no records as to the amount of such labor. The value of the labor furnished by Shiloh *621 was not considered by J and D to represent income and was not reported as such on the partnership's tax returns for these years. During 1977, respondent commenced an audit of J and D's partnership returns for the years 1974 and 1975, and concluded that many of J and D's claimed deductions for these years were either unsubstantiated or not ordinary and necessary expenses of carrying on a sawmill business. On December 13, 1977, John W. Bender filed a protest letter with the Internal Revenue Service (hereinafter IRS) on behalf of himself and his wife, Daniel M. Nisly and Alma Nisly, and J and D objecting to respondent's audit of J and D.The protest letter stated, in pertinent part, as follows: Our position is, as of July 1973 we have of our own free will chosen to make this business [J and D] an extension of the present activity of God. Therefore, all that this business is involved in is ordinary and necessary business function.
Law - United States Constitution, Art. I Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof-- In the notices of deficiencies, respondent determined that petitioners had understated their distributive *622 shares of partnership income from J and D for 1974 and 1975. The following chart shows petitioners' distributive shares of partnership income reported on their joint returns, their distributive shares of partnership income determined by respondent, and the understatement of their distributive shares of partnership income as determined by respondent: Understatement of
Distributive
Distributive
Distributive
Shares of
Shares of
Shares of
Partnership
Partnership
Partnership
Income Reported
Income Determined
Income
Taxable
on Joint
by
Determined by
Petitioners
Year
Return
Respondent
Respondent
John W. Bender
1974
$ 9,348.13
$ 31,079.57
$ 21,731.44
1975
2,660.19
19,318.57
16,658.38
Daniel M. Nisly
1974
$ 9,348.13
$ 33,589.00
$ 24,240.87
1975
2,660.19
24,488.57
21,828.39
Respondent's adjustments [5] were based on his determination that J and D and claimed deductions of $ 45,972.31 and $ 38,486.77 for 1974 and 1975, respectively, which were either unsubstantiated or not ordinary and necessary expenses of carrying on a sawmill business. These deductions consisted primarily of payments made by J *623 and D for purchases, materials, supplies, and repairs needed by either Shiloh or Living Soils. OPINION We must determine whether certain expenditures by J and D for purchases, material, supplies, and repairs for the benefit of Shiloh and Living Soils should be disallowed in determining petitioners' distributive shares of partnership income. See secs. 701-704. Petitioners argue that these expenditures are deductible because they are ordinary and necessary business expenses within the meaning of section 162. On the other hand, respondent maintains that J and D's expenditures in question are nondeductible personal expenses. Sec. 262. We agree with respondent.
Section 162 provides taxpayers with a deduction for all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on *624 any trade or business." It is axiomatic that to be deductible under section 162, the business expense must be incurred in the taxpayer's own trade or business, and not the trade or business of another. Interstate Transit Lines v. Commissioner,319 U.S. 590 (1943). During the years in issue, the business of J and D was the operation of a sawmill; it was not in the business of operating communal farms or training people for the ministry. Consequently, we find that the expenditures that J and D made for the benefit of Living Soils and Shiloh to be not only unnecessary, but also to a high degree extraordinary. See Interstate Transit Lines v. Commissioner,supra at 594; Deputy v. Du Pont,308 U.S. 488, 494 (1940). Nevertheless, petitioners maintain that these expenditures are deductible under section 162 because J and D was under a contractual obligation to provide funds for Shiloh in exchange for a supply of labor. [6] We disagree. *625 When petitioners met with Living Soils and The Living Word in July 1973, it is clear that the Group was primarily concerned with creating Shiloh. They were disenchanted with the traditional spiritual training offered by various seminaries because they felt there was not enough emphasis placed on the work ethic. Petitioners have failed to establish that they attended the meeting in order to reach an agreement that would secure a supply of labor for J and D, or that J and D ever reached such an agreement with Shiloh (or The Living Word). Petitioners and The Living Word never agreed on any specific exchange of money for labor. Furthermore, the record is inconsistent as to the amount of labor that Shiloh actually furnished to J and D. All we really know is that Shiloh furnished some labor on a sporadic and irregular basis, but that J and D kept no records of the amount of such labor. If petitioners had wanted or needed a supply of labor from Shiloh, it seems reasonable to assume that they would have negotiated for a specific amount of labor be furnished over a specific period of time. With respect to J and D's payments for the benefit of Living Soils, petitioners have also failed *626 to offer any adequate explanation as to why such payments would qualify as an ordinary and necessary business expense. We think that petitioners simply wanted to make contributions for the benefit of Shiloh and Living Soils in order to further their own religious beliefs. [7] In John W. Bender's protest letter which was written on behalf of petitioners and filed with the IRS, he acknowledged that J and D made payments for the benefit of Shiloh and Living Soils in order to make J and D's business "an extension of the present activity of God." Although we do not doubt that petitioners' religious beliefs are sincere, they have simply failed to establish that respondent's determination was erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
*627 To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. %the Living Word's Articles of Incorporation provide that the primary purpose of the corporation is "to teach the Bible and the Holy Scriptures."↩
3. The record does not reveal the entire agreement that Living Soils had with the owners of the farms that it was operating. However, its commitment to provide Shiloh with food from these farms indicates that the agreement entitled it to at least some of the crops grown on these farms.↩
4. The record does not reveal how many people Shiloh was training for the ministry during 1974 and 1975.↩
5. It should be noted that the statutory notices allocated different distributive shares to the two partners because they received different amounts of salaries from J and D. Respondent determined that the additional partnership income caused by his disallowance of the deductions at issue should be divided equally between petitioners; petitioners have not argued otherwise.↩
6. We recognize that there is no requirement that there must be an underlying legal obligation to make an expenditure before it can qualify as "ordinary and necessary" within the meaning of section 162. Moreover, "the mere fact that the expense was incurred under contractual obligation does not" necessarily qualify it to be deductible under section 162(a). Interstate Transit Lines v. Commissioner,319 U.S. 590, 594 (1943). The central question is whether, "in all the circumstances, the expenditure is ordinary and appropriate to the conduct of the taxpayer's business." Waring Products Corp. v. Commissioner,27 T.C. 921, 929 (1957); Champion Spark Plug Co. v. Commissioner,266 F. 2d 347 (6th Cir. 1959), affg. 30 T.C. 295↩ (1958). Petitioners, however, have argued that a contractual agreement existed which gave rise to deductions under section 162; therefore, we have addressed their contract argument.
7. Petitioners have not argued nor does the record establish that J and D's payments for the benefit of Living Soils and Shiloh were deductible under section 170. We also note that petitioners have argued that some of the disallowed deductions were expenditures made for equipment and other needs of J and D rather than for the benefit of Living Soils and Shiloh. We find that petitioners have failed to substantiate such a claim and, therefore, we uphold respondent's determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.↩