T.C. Memo. 2017-18

UNITED STATES TAX COURT

PHILIP S. BROWN AND AMBER L. BROWN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15627-15.                          Filed January 24, 2017.

H and W owned INC and LLC, each an S corporation. During tax years 2000 through 2002, INC accumulated unpaid payroll tax liabilities, for which trust fund recovery penalties subsequently were assessed against H and W. INC did not file any tax returns from 2003 through 2011 and was administratively dissolved by the State of Arizona in 2007. In 2012 LLC sent $215,000 from its bank account to the trust account of H and W's attorney, who then sent a certified check in that amount to the Internal Revenue Service. INC filed a tax return for 2012, indicating that it is a cash basis taxpayer and showing no assets, income, or other tax items, with the exception of a deduction of $180,911 for salaries and wages. This deduction was passed through to H and W as an ordinary business loss. INC did not pay any salaries or wages in 2012, nor did it have any bank accounts at any point in 2012.

Held: INC was not engaged in a trade or business in 2012.

[*2] Held, further, even if its liabilities arose from the conduct of a prior trade or business, INC is not entitled to a deduction for 2012 of $180,911 for salaries and wages because by 2012 it was no longer in existence.

Held, further, even if INC did exist in 2012, it is not entitled to the deduction because it did not actually pay the amount in question.

Held, further, even if INC existed in 2012 and paid the amount in question, it is not entitled to the deduction because the payment was of nondeductible trust fund recovery penalties assessed against H and W. See sec. 162(f); Patton v. Commissioner, 71 T.C. 389 (1978).

Wayne B. Chapin, for petitioners.

Randall L. Eager, Jr., and Douglas S. Polsky, for respondent.

MEMORANDUM OPINION

LARO, Judge: This case arises out of respondent's adjustments to petitioners' amended return for the 2010 tax year and original returns for the 2011 and 2012 tax years. The case was submitted fully stipulated for decision without trial. See Rule 122.[1]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) applicable to the relevant years. Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** Respondent determined deficiencies in petitioners' Federal income tax for tax year 2010 of $29,255, for tax year 2011 of $25,566.20, and for tax year 2012 of $141,771.  Petitioners have conceded all adjustments, save one:  the disallowance of a $180,911 deduction for salary and wage expenses claimed by Quantum Group, Inc. (Quantum Inc.), a former S corporation once owned by petitioners, on its 2012 Form 1120S, U.S. Income Tax Return for an S Corporation, and passed through to petitioners on their 2012 Schedule E, Supplemental Income and Loss.

Thus, after petitioners' concessions, we decide the sole remaining question of whether Quantum Inc. may deduct trust fund recovery penalties (TFRPs) owed by petitioners, thereby passing that loss on to petitioners.  We hold that it may not.

## Background

I.    Overview

The parties submitted this case fully stipulated under Rule 122.  The stipulations of fact and the facts drawn from stipulated exhibits are incorporated herein.  Petitioners are residents of Overland Park, Kansas.  This case is appealable to the Court of Appeals for the Tenth Circuit absent stipulation of the parties to the contrary.

[*4] II.    Petitioners and Their S Corporations

Philip S. Brown has been involved in the telecommunications industry since at least 1996.  He is the founder of Quantum Group, LLC (Quantum LLC).  He and his wife, Amber L. Brown, held 100% of the membership interests in that entity until 2012, when the company added two additional members, whereupon petitioners' interests were reduced to 87.5%.

For some unspecified period, petitioners also owned what they claim to have been 100% of Quantum Inc., an entity incorporated in March 1996 and distinct from Quantum LLC, notwithstanding the similarity between the two companies' names.  Quantum Inc. was administratively dissolved by the State of Arizona on November 26, 2007, for failure to file an annual report and was not registered as an active entity with any State during 2012.  It did not provide any services during 2012 and generated no income.

III.    Trust Fund Recovery Penalties

Employers generally must withhold from their employees' pay income and employment taxes.  Secs. 3102(a), 3402(a).  Payroll tax withholding is also known as a "trust fund tax" because the Code requires that the tax so collected "shall be held to be a special fund in trust for the United States."  Sec. 7501(a); see also Mason v. Commissioner, 132 T.C. 301, 321 (2009).  An employer who willfully

[*5] fails to withhold and pay over payroll taxes is liable under section 6672(a) for a penalty, also known as a TFRP, equal to the total amount of the tax not collected or paid over. The liability for this penalty may extend beyond a corporate employer to its officer, member, or employee who had a duty to collect and pay over the tax. See sec. 6671(b). The TFRP is assessed and collected in the same manner as a tax. Sec. 6671(a).

During tax years 2000 through 2002, Quantum Inc. accumulated unpaid payroll tax liabilities, for which TFRPs were assessed against petitioners. In 2012 petitioners owed at least $180,911 in TFRPs.

On December 31, 2012, petitioners transferred $215,000 from Quantum LLC's bank account to their attorney's trust account. On the same day, their attorney sent a letter and a certified check for $215,000 to respondent. The letter read in relevant part:

> Enclosed please find payment in the amount of $215,000.00 for payment of Employee Withholding Amounts i.e. Trust Fund Taxes (amounts eligible for Trust Fund Recovery Penalty) for Quantum Group, Inc. EIN [redacted] for the periods 12-31-2000, 3/31/2001, 06/31/2001, 09/31/2001, 12/31/2001, 03/31/2002. The enclosed amount is hereby directed to be applied to only the Employee Withholding Amounts i.e. Trust Fund Taxes (amounts eligible for Trust Fund Recovery Penalty) portion of the employment taxes due for the above periods.

**[*6]**   In the event that funds remain after the application of the above amount to the Employee Withholding Amounts i.e. Trust Fund Taxes (amounts eligible for Trust Fund Recovery Penalty) taxes due for the above identified periods please apply those excess funds to the Accrued Interest arising from the non-payment of the Employee Withholding Amounts i.e. Trust Fund Taxes (amounts eligible for Trust Fund Recovery Penalty) portion of the employment taxes due for the above periods.

This amount cannot be applied by the Internal Revenue Service to any amount due for Employee Withholding Amounts i.e. Trust Fund Taxes (amounts eligible for Trust Fund Recovery Penalty) for Quantum Group, Inc. EIN [redacted] for the periods 12-31-2000, 3/31/2001, 06/31/2001, 09/31/2001, 12/31/2001, 03/31/2002 except those amounts and applicable accrued interest for which the Shareholders of Quantum Group, Inc. have previously been determined to be liable pursuant to the Trust Fund Recovery Penalty (TFRP) procedures of the Internal Revenue Service for the above identified periods.

The accompanying check included the handwritten notation: "Payment on behalf of Quantum Group, Inc. EIN [redacted] for Employee Withholding Due for periods 12/31/2000 - 03/31/2001 as instructed in attached letter". Respondent applied this amount against the TFRPs owed by petitioners for tax years 2000 through 2002.

Quantum Inc. did not have any bank accounts at any point in 2012, nor did it transfer any funds directly to petitioners, their attorney, or respondent.

[*7] IV.     Quantum Inc.'s 2012 Tax Return

Quantum Inc. did not file any income tax returns for the 2003 through 2011 tax years. The company filed on September 16, 2013, a Form 1120S for the 2012 tax year, signed by the company's president, whose name in the return is illegible, and petitioners' attorney. Quantum Inc.'s tax return, marked as a final return, indicated that the company used the cash method of accounting and that its business activity was "tower broker" and its product or service was "tower sales". The return also indicated that the company held no assets and had no income or deductions, aside from the aforementioned $180,911 deduction for salaries and wages, which translated into an ordinary business loss on the company's return. Two Schedules K-1 (Form 1120S), Shareholder's Share of Income, Deductions, Credits, etc., were attached to the return, indicating that each petitioner owned 50% of Quantum Inc., with Mr. Brown being allocated a $90,455 ordinary business loss and Mrs. Brown being allocated a $90,456 ordinary business loss. Petitioners included the losses from the 2012 Quantum Inc. Schedules K-1 on their 2012 income tax return.

Quantum Inc. did not issue Forms W-2, Wage and Tax Statement, to anyone in 2012. Petitioners did not report any salary or wage income from Quantum Inc. on their 2012 income tax return. Petitioners contend, and respondent disputes,

**[*8]** that the deduction for salaries and wages reported on Quantum Inc.'s 2012 return is for salary and wage expenses not deducted by Quantum Inc. for tax years 2000 through 2002.

## V.     Notice of Deficiency

Respondent on March 17, 2015, issued a notice of deficiency to petitioners with respect to their income tax liabilities for tax years 2010 through 2012. In addition to all other adjustments, which petitioners have since conceded, respondent on Form 4605-A, Examination Changes - Partnerships, Fiduciaries, S Corporations, and Interest Charge Domestic International Sales Corporations, disallowed Quantum Inc.'s 2012 deduction of $180,911 for salaries and wages. This disallowance was reflected in respondent's adjustments to petitioners' Schedule E income, disallowing petitioners' claimed corresponding loss of $180,911 from Quantum Inc.

## Discussion

## I.     The Parties' Arguments

### A.     Petitioners' Argument

Petitioners submit that they are entitled to deduct the $180,911 loss passed through from Quantum Inc.'s deduction of the payment to the Internal Revenue Service (IRS). Petitioners claim that, while Quantum Inc. did not operate for

[*9] several years and was dissolved in 2007, it still had liabilities for outstanding employment taxes. They allege that Quantum Inc. was routinely contacted by the Commissioner with demands for payment. Petitioners contend that they contributed $180,911 to Quantum Inc. which the corporation then used to pay the outstanding payroll tax liabilities. Petitioners' position is that the payment of the outstanding liabilities is deductible by Quantum Inc. as an amount representing the employees' portion of payroll tax withholding, which is deductible by the corporation as an ordinary and necessary business expense.

Petitioners point out that section 162(a) allows a deduction for "ordinary and necessary" business expenses, which requires that such expenses be "appropriate and helpful", Commissioner v. Tellier, 383 U.S. 687, 689 (1966), but not necessarily unavoidable, habitual, or common, Welch v. Helvering, 290 U.S. 111, 113-114 (1933). Accordingly, petitioners argue, reasonable direct compensation to employees, including the payment of their payroll taxes, is deductible. This is so even in the absence of an underlying legal liability on the employer's part to pay such taxes. See Champion Spark Plug Co. v. Commissioner, 30 T.C. 295, 298 (1958), aff'd per curiam, 266 F.2d 347 (6th Cir. 1959). Since section 162 does not impose a "but for" test upon the deductibility of expenses, petitioners assert, the deduction here should be allowed absent a

[*10] showing that the payments were inherently unreasonable in amount, against public policy, or otherwise barred. Petitioners maintain that payment of the payroll taxes benefited Quantum Inc. because respondent was making demands of the company to pay the taxes.

Petitioners further contend that Quantum Inc. was carrying on a trade or business because it paid payroll tax expenses related to the previous operations of its business, which should be considered a continuation of the corporation's business activities from previous years. According to petitioners, the act of filing a tax return proves that Quantum Inc. was in fact carrying on a trade or business.

Petitioners additionally observe that the employment taxes ostensibly paid by Quantum Inc. are not TFRPs because Quantum Inc. does not owe any TFRPs. According to petitioners, the payment of employment taxes by a corporation is a deductible expense regardless of the fact that an owner of the corporation may get a secondary benefit from the payment of the taxes.

B.     Respondent's Argument

Respondent supports his denial of Quantum Inc.'s deduction and corresponding adjustment to petitioners' income by two arguments: first, that the salaries and wages expense reported by Quantum Inc. is nondeductible because the company did not incur or pay any expenses in 2012 while carrying on a trade or

**[*11]** business; and second, that the expense is not deductible because it was for nondeductible TFRPs.

According to respondent, petitioners are unable to meet the burden of proof to show entitlement to the section 162 deduction for the reported expense. See Rule 142(a); Alevras v. Commissioner, T.C. Memo. 1987-497. Respondent argues that petitioners cannot show that (1) Quantum Inc. paid or incurred the expense at issue during 2012 or (2) the expense was incurred in carrying on any trade or business. Respondent contends that it was Quantum LLC, a legally distinct entity, that paid the expense by transferring the money to petitioners' attorney, and that Quantum Inc. should not be considered as having paid that amount. Respondent further asserts that in any event the amount paid was for TFRPs incurred by petitioners and not Quantum Inc. Finally, respondent maintains that Quantum Inc. was not carrying on any trade or business allowing it to deduct any expenses, since it was dissolved, had not filed any returns for nearly a decade, provided no services, reported no income, and had no bank accounts.

Respondent also asserts that the payment of TFRPs is not deductible by the operation of section 162(f), which prevents the deduction of payments of fines or similar penalties made to a government for the violation of any law. Respondent points to several cases in this Court denying deductions for TFRP payments by

[*12] reason of section 162(f).  See, e.g., Patton v. Commissioner, 71 T.C. 389 (1978); Duncan v. Commissioner, T.C. Memo. 1993-370, aff'd in part, rev'd in part and remanded, 68 F.3d 315 (9th Cir. 1995).  According to respondent, the payment made to the IRS was for the TFRPs owed by petitioners, as evidenced by the circumstances of the payment and petitioners' attorney's letter that accompanied the payment.  Respondent argues that, pursuant to the instructions in that letter, he applied the $215,000 payment to petitioners' TFRP liabilities and related interest that had accrued on that amount.

Furthermore, respondent objects to petitioners' proposed findings of fact in their briefs on the grounds that they do not conform to Rule 151(e)(3) and that respondent's proposed findings are a more complete and accurate statement of the material facts.  Accordingly, respondent urges this Court to adopt his proposed findings of fact as the Court's findings.

Respondent disputes petitioners' legal arguments as well.  He argues that petitioners' statement of ownership of Quantum Inc. is unclear as the corporation has been dissolved since 2007.  Respondent also disagrees with petitioners' contention that they contributed $180,911 to Quantum Inc. which was then used to pay Quantum Inc.'s employment tax liability; according to him, there is no evidence showing that Quantum Inc. had actually paid the expense at issue.

**[*13]** Finally, respondent asserts that his calculations show that Quantum Inc. may have deducted the payroll tax expenses for prior years and that petitioners have not adduced any evidence to refute this assertion, thus failing to meet their burden of proof.

## II.     Adoption of Petitioners' Proposed Findings of Fact

As we noted above, respondent urges that this Court adopt his proposed findings of fact instead of petitioners' proposed findings, on the grounds that they do not conform to Rule 151(e)(3) and that respondent's proposed findings are a more complete and accurate statement of the material facts.  We hold that we need not adopt one party's proposed findings over the other's, since the stipulations of fact and the stipulated exhibits are sufficient for us to reach our conclusion in this case.

## III.    Deductibility of Payment by Quantum Inc.

### A.     Burden of Proof

The Commissioner's determinations in a notice of deficiency generally are presumed to be correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determinations are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. at 115.  The necessary facts have been stipulated by

[*14] both parties.  And petitioners have not argued that the burden of proof should be shifted to respondent; thus section 7491(a) does not apply.

B.    Whether Quantum Inc. Was Engaged in a Trade or Business

Section 162(a) allows for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  To be engaged in a trade or business, "the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

For a taxpayer to "carry on" a trade or business, it must engage in some activity.  We have consistently denied section 162 deductions where there were no activities underway, no services performed, no customers attended to, no sales conducted, and no income earned.  See, e.g., Wolfgram v. Commissioner, T.C. Memo. 2010-69; Vianello v. Commissioner, T.C. Memo. 2010-17; Haney v. Commissioner, T.C. Memo. 2007-238.  It is clear from the record that Quantum Inc. was not engaged in any activity during 2012.  It had no assets or income, nor did it have any customers or perform any services.  We are not persuaded by petitioners' argument that the act of filing a tax return proves that Quantum Inc. was carrying on a trade or business.  We ascertain whether a taxpayer is engaged

**[\*15]** in a trade or business on the basis of a review of all relevant facts and circumstances. See, e.g., Bot v. Commissioner, 118 T.C. 138, 146 (2002), aff'd, 353 F.3d 595 (8th Cir. 2003). The act of filing a tax return on its own, when weighed against the wholesale lack of any assets, activity, or income, is insufficient to establish the existence of a current trade or business. Thus, we conclude that Quantum Inc. was not engaged in a trade or business in 2012.

However, a cash basis taxpayer may deduct ordinary and necessary business expenses, the liability for which arose in the active conduct of a trade or business, even if the payment was made after the termination of that business. Dowd v. Commissioner, 68 T.C. 294, 301 (1977); see also Tolzman v. Commissioner, T.C. Memo. 1981-689. This is also the position taken by the Commissioner in Rev. Rul. 67-12, 1967-1 C.B. 29. Thus if the $215,000 payment was made to settle Quantum Inc.'s payroll tax liabilities from its prior conduct of a trade or business, then the lack of a present trade or business is not necessarily an obstacle, provided that Quantum Inc. was still in existence in 2012.

C. Whether Quantum Inc. Was in Existence in 2012

A necessary precondition to any deduction is that the taxpayer seeking that deduction actually exist. Viewing the facts and circumstances holistically, we are not satisfied that Quantum Inc. still existed in 2012 for Federal tax purposes. In

[*16] addition to the corporation's apparent inactivity after 2002, it was administratively dissolved by the State of Arizona in 2007. Whereas all corporations, regardless of the amount of their gross income, must file income tax returns, corporations that have ceased to exist do not file such returns. See sec. 1.6012-2(a), Income Tax Regs.

A corporation ceases to exist once "it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued." Id. subpara. (2). Quantum Inc. had not filed any returns after 2002 (with the exception of the 2012 return) and was dissolved in 2007, and petitioners have adduced no evidence that it had any assets or engaged in any activities after 2002. And while petitioners assert that Quantum Inc. was routinely contacted by the Commissioner with demands for payment of its payroll tax liabilities, there is nothing in the record to corroborate this claim besides petitioners' unsworn statements in their briefs. We find therefore that Quantum Inc. did not exist in corporate form in 2012, cf. Hill v. Commissioner, 66 T.C. 701, 705 (1976) ("If a corporation retains assets, even though under State law its legal existence has been terminated and the corporation is in the process of liquidation, it will be treated as a continuing taxable entity."),

[*17] and for that reason could not properly have filed a return or claimed a deduction. "Dead men don't bite," Robert Louis Stevenson wrote, Treasure Island 91(Boston, Roberts Bros. 1884), and dead corporations tell no tales.

### D. Whether Quantum Inc. Paid the Amount in Question

Even if Quantum Inc. were not defunct in 2012 and could have filed a return and claimed deductions, it could not deduct the $180,911 payment to the IRS because it did not actually pay that amount. It is irrelevant that Quantum Inc. may have incurred the expense in a prior year since it was not an accrual method taxpayer. See United States v. Hughes Props., Inc., 476 U.S. 593, 599 (1986); see also sec. 1.461-1(a)(1), Income Tax Regs. ("Under the cash receipts and disbursements method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid."). Thus, for the corporation to be able to deduct expenses under section 162, it must have paid in 2012 the amount at issue. Quantum Inc. did not do so.

Quantum LLC, an unrelated entity, disbursed $215,000 to petitioners' attorney, who subsequently directed that money to the IRS with an accompanying letter stating that the amount was in satisfaction of "those amounts and applicable accrued interest for which the Shareholders of Quantum Group, Inc. have previously been determined to be liable pursuant to the Trust Fund Recovery

**[*18]** Penalty (TFRP) procedures of the Internal Revenue Service". Quantum Inc. did not have a bank account into which the $215,000 was deposited, nor is there any evidence that the corporation at any point held title to the money. Petitioners claim that they had contributed money to Quantum Inc.,[2] which then used the sum to pay its alleged outstanding payroll tax liabilities, but they have not presented evidence to corroborate this assertion. All the record shows is a distribution from Quantum LLC that was deposited into petitioners' attorney's trust account, wherefrom it was sent to the IRS, bypassing Quantum Inc. entirely. The certified check from petitioners' attorney stating that the $215,000 payment is "on behalf of Quantum Group, Inc." also fails to establish that Quantum Inc. was the actual payer of the sum: When it comes to a taxpayer deducting expenses under section 162, a payment on behalf of that taxpayer by another is not the same as a payment made by the taxpayer itself. See, e.g., Stewart v. Commissioner, T.C. Memo. 1992-211, 63 T.C.M. (CCH) 2707, 2708 (1992) ("As a general rule, section 162 only allows the deduction of the taxpayer's own business expenses [.]"), aff'd without published opinion, 986 F.2d 1429 (10th Cir. 1993); see also United States

---

[2]Petitioners maintain that they contributed $180,911 to Quantum Inc. While this amount is equal to the deduction on the corporation's 2012 tax return, it does not correspond to the $215,000 amount sent by petitioners' attorney from his trust account to the IRS. Petitioners have not explained this discrepancy.

[*19] v. Cocke, 399 F.2d 433, 447 (5th Cir. 1968) (describing the "general tax principle, that deductions for expenses can be taken only by the party who actually 'paid or incurred' them"); H.W. Nelson Co. v. United States, 158 Ct. Cl. 629, 637 (1962) ("There are no provisions in the tax laws whereby one taxpayer can deduct from his gross income expenses incurred and defrayed by another."). Accordingly, we conclude that, were Quantum Inc. considered extant in 2012, it would still not be entitled to deduct the payment because it did not actually pay the amount it sought to deduct.

Even if petitioners had contributed the $215,000 amount to Quantum Inc. and the corporation still existed at the time, petitioners nonetheless have failed to carry their burden of proving that the sum was for anything other than their TFRP liabilities. Petitioners' potentially strongest evidence, their attorney's letter accompanying the certified check sent to the IRS, is opaquely worded. However, we cannot ignore the letter's repeated references to "amounts eligible for Trust Fund Recovery Penalty" and its express limitation to "those amounts and applicable accrued interest for which the Shareholders of Quantum Group, Inc. have previously been determined to be liable pursuant to the Trust Fund Recovery Penalty (TFRP) procedures". We thus find the letter's most plausible meaning to be that Quantum Inc. purported to voluntarily pay the TFRPs on behalf of

[*20] petitioners, something that would not entitle the corporation to a deduction in the ordinary course. See, e.g., Inland Asphalt Co. v. Commissioner, T.C. Memo. 1982-463, aff'd, 756 F.2d 1425 (9th Cir. 1985). Moreover, as respondent rightly observes, the payment of a TFRP is not deductible in any event, since such a deduction is barred by section 162(f). See Patton v. Commissioner, 71 T.C. 389.

IV.     Conclusion

We have found that Quantum Inc. may not deduct the payroll tax payment made in 2012 ostensibly on its behalf, because the corporation was not in existence at the time. But even if Quantum Inc. did exist in 2012, it could not have deducted the sum, for it had not actually paid the amount. At any rate, petitioners have not satisfactorily demonstrated that the payment was for anything other than their TFRP liabilities, which are nondeductible under section 162(f).

We have considered all of the parties' arguments, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.